you call the next piece or the first piece of the year please mr. Walden proceed but before come on up but before we get started there's been as I'm sure you know better than we there's been kind of a some things got a little bit messed up there there's a motion for sanctions on this case right there is a pending appeal based on the 137 motion down below that somehow we missed it yeah what is it's my fault okay and so what we're suggesting is that we consolidate this appeal in that appeal you could argue today if you folks agree with this you can do an expedited briefing and just supplemental briefs on your this pending appeal on the 137 issue when you get back to your offices you have a cup of coffee call each other work it out as if you would like a different briefing schedule than maybe that that has already been set out contact the clerk's office they'll work with you you can do supplemental briefs as opposed to doing new briefs in a separate appeal not put you know you don't have to agree with that that you're sitting here but if that is agreeable to you folks talk to each other after this is over and give the clerk's office a call and if you decide that's not agreeable then also let the clerk's office know that too okay so we'll try to accommodate you if we can okay all right oh and so you know it would be a supplemental it would be put together and when the order or opinion comes out it'll just be one after the conclusion so to the extent of the pellet opinion can be delayed any more than normal I suppose it might slow things down a little bit on getting a there'd be no ruling on this until the everything's put together we would actually be consolidating yeah we would be in those it would be a consolidated appeal be a consolidated order opinion so just so you're clear on what it is we're suggesting to you that you might be agreeing with when you talk to the clerk or each other later okay everybody before we get started anybody have any questions about that what we're suggesting here okay all right oh good morning may it please the court counsel my name is Mark Walton I'm here on behalf of the petitioner James Hanley as the court is no doubt aware from the briefs this is an action brought under the probate act a two count petition count one seeking the appointment of a guardian before an alleged disabled adult and count two seeking your order of protection under the probate act for alleged abuse and and other facts so I first like to address just just briefly some background and then get into the main substance of count one the alleged disabled adult John P Hanley has ten children and petitioner Jim Hanley is his son Jim alleges in his petition that John P Hanley was not fully capable of Jim alleges in count two that his sister Margaret Hanley dominates and controls her father John P Hanley and limits his interactions with other family members children and including mr. Hanley siblings now when you file an action under the probate act seeking to appoint a guardian in some circumstances and the act contemplates you'll file a report from a physician indicating the need for a guardian however the probate act does not require that a report be attached to the petition and in fact permits expressly the court to appoint an independent medical examination of the alleged disabled adult that's exactly what occurred here mr. Hanley follows petition without a report and asked the court to order an independent medical examination in response to the petition both the the alleged disabled adult John P Hanley and the respondent Margaret Hanley filed motions to dismiss and those motions were brought both pursuant to section 2 615 and section 2 619 the bulk of the focus of the appeal is on the 619 motions and for for the for John P Hanley's part his motion to 619 attached the report of a physician that in conclusory fashion concluded that no guardian was necessary so I'd like to focus first on the 619 aspect of John P Hanley's motion to dismiss mr. Walton could you explain a little bit about why mr. Hanley thought that this was appropriate he hadn't seen his father or talked to him for 18 years certainly well that gets to the response affidavits that were filed and you know in response to the to the motion to dismiss Jim Hanley filed four affidavits two from siblings of his and two from mr. Hanley siblings and what these affidavits detail first of all it's undisputed that mr. Hanley John P Hanley the alleged disabled adult sustained a pretty serious head injury in 2005 resulting from a fall and he in fact continued to be treated up through the filing of this petition for neurological injuries resulting from that fall now the affidavits of particularly mr. Hanley siblings but also two of the other children create a picture of a man who following the fall changed markedly he ceased having contact with family members that he had remained in close contact with before the fall his behavior changed and that he ceased recognizing family members including his children the interactions that are detailed in these affidavits you know specify instances where close family members ran into or met John P Hanley out in public and he didn't recognize them he wouldn't communicate with them and it's because of these changes that lasted up through 2009 and the petition was filed in 2010 that's what caused mr. Hanley to file the petition that together with the allegations and count to of his sister Margaret Hanley and you controlling mr. Hanley's state you know his assets his business these are the reasons that precipitated the filing of the petition so getting into the medical reports that were attached in motion to dismiss first you have a report from a doctor Liza and dr. Liza in his report indicates that John P Hanley in this frontal contusion and interventricular hemorrhage nevertheless dr. Liza claims in his report in conclusive fashion that John P Hanley recovered fully and doesn't need a guardian subsequent to the motion to dismiss the John P Hanley's attorneys file a supplement to the motion and attached another physician report and that was a doctor Matai and dr. Matai is a neurologist and her report indicates that she was treating mr. Hanley for the injuries he sustained in the fall and a couple of aspects of a report that give rise to the red flags first dr. Matai indicates that the John P Hanley had quote-unquote minimal trouble adapting to his surroundings and performing activities then she goes on to say that his neurological deficit doesn't significantly impact his functioning well these are are certainly questions that Jim Hanley wanted answers to you wanted to know what is the neurological deficit and what does dr. Matai mean when she says that it doesn't significantly impact his functioning well dr. Matai in her report like dr. Liza goes on to conclude in conclusory fashion no guardianship is needed the real question before this court because we're here on a motion to dismiss so the real question before the court is is it proper under 619 to dismiss a complaint based on conclusory statements without any supporting facts without supporting documentation such as medical reports you know dr. Liza relied on what he called a mini mental exam but he didn't attach the test results to his now understand when the original motion to dismiss was filed in the supplement was filed all we had were reports they weren't sworn they weren't in the form of an affidavit and Jim Hanley's counsel in response to the motion to dismiss pointed out that under 619 clearly you know the rules require an affidavit so John P Hanley's counsel sub you know filed supplemental affidavits that more or less incorporated the statements in the reports what's key here the affidavits which is where this court has to focus its attention for a 619 motion again did not have any factual support for the conclusions that no guardian is needed and this is really significant in this case when the reports indicate neurological injuries of the magnitude that are pointed out but isn't one of the people that filed the affidavit a report at treating neurologist it is indeed you're on and you think a neurologist knows what he's talking about when he says my patient desert doesn't need a guardian I mean is that really a conclusion from a well judge the statutory standard the definition that we're dealing with here is is John P Hanley fully capable of managing his person in the state and that's a legal conclusion that the court has to make the physician making that conclusion you know the real question is do we get to a hearing we let the judge make that decision or do we let the physicians in a conclusive fashion make that decision and abandon the statutory scheme which leads to a hearing well doesn't doesn't the judge make the decision based on the physician's affidavit well certainly and all the more reason why the affidavits take on such significant meaning in this case in any case where rule 191 has specific requirements for an affidavit and anytime you have a dispositive motion whether it's summary judgment or a 619 motion where reliance is made on affidavits and you're going to forego a hearing on the merits the specific requirements of the Supreme Court rule are that the affidavits have to attach all documents that are relied upon and they have to provide factual background or factual underpinnings that support any conclusions that are made in the procedural question these affidavits are completely devoid of any factual support I treated him I've concluded that notwithstanding the neurological deficits I concluded that he doesn't need a guardian well that's how she she dr. Matai characterized the neurological deficit as not significantly impacting functioning and and she used the word minimal in the context of John P Hanley having minimal trouble adapting to his surroundings so the question is is this something that the petitioner has an opportunity to explore and it brings us to let me just down in the real world sure what do you suppose the likelihood is that you can bring anybody in there who's going to get a judge to Mr. Hanley's treating neurologist who says he's fine well judge it depends on what the neurologist has to say in a deposition for example and the cases that the council relies on in fact at least the Silverman case arose just in that context a physician report that says no guardian is needed in the court instead of just dismissing the case allow discovery at least let the treating neurologist and say let's talk about the course of treatment from 2005 up through 2010 what do you mean when you say for example that he suffers from a neurological deficit but it doesn't significantly impact what kind of impact does it have do you think that this is really the spirit of that statute to let a family member whom I think the one after mr. Hanley's affidavit said it talked to an 18-year file a paper in the court and then make this the respondent mr. Hanley and his physicians come in and disclose all his medical records and go through and prove to the court and your client but he's not not well I don't know what that's the intent judge but you know again understand you've got and you can't ignore the affidavits that mr. James Hanley filed from family members describing what again I can only describe as a market change in behavior following the fall and that change in behavior failing to recognize siblings and children just you know a market shift in corresponding or and you know it's one thing for a doctor to say we don't need a guardian but as a family member when you're confronted with a father no longer recognizes you or as a sibling you're confronted with a brother no longer just following a significant neurological injury no longer communicates with you or recognizes you these are things that as a family member in good faith when you come in with a petition like this you ought to be able to explore and I do want to at least touch on the 615 motion to dismiss for failure to state you know grounds for relief I think that you know again this act is this action is controlled by the probate act not by the code of civil procedure there's case law that we cited in our brief so I don't think that's a grounds for dismissal and then I do before I sit down want to at least briefly touch on Margaret Hanley's motion to dismiss in her 619 motion to dismiss count to she says that because John P Hanley has signed a statement that he didn't want the order of protection proceedings to move forward that the court has to dismiss well again it's a question of timing I've addressed that in my brief the order of protection proceedings can be brought pursuant to the probate act in conjunction with a proceeding to appoint a guardian so until the proceeding for the appointment of the guardian was dismissed I think it was proper to include count to with it with that unless there's any other questions yeah I have a question you're asking the court or mr. Hanley is asking the court to look at a situation where he has been totally estranged from his father for 18 years and is now asking to have himself appointed as the guardian of the person of a father who said he wanted nothing to do with him is that basically what we're looking at well yes and the issue though judge is at the time that John P the father indicated that he wanted nothing to do with him this was after the fall this is after the neurological injuries that are indicated in the medical reports was the fall 18 years ago well no no you're right in that that is correct thank you mr. Walden one first mr. Radley may it please the court I'm David Bradley Susan Dawson Tibbetts who is here and I represent John P Hanley the appellee if I may address the facts just very briefly in 1992 James Hanley the plaintiff or petitioner in this case worked for his father in his father's business in Peoria a Lucas and sons and in that year the father mr. Hanley John P Hanley fired his son discharged ever since then the family has been somewhat dysfunctional there's been an James Hanley on one side and some of his brothers and the father and that's been a consistent characteristic of the family for the last 18 years in fact the father did not communicate with James Hanley or the other sons for a period of 18 years in 2005 that was the year when John P Hanley had the fall the injury to his head that was five years before the petition was filed in this case incident in 2008 mr. Hanley the father had been annoyed by some of the actions of his sons who were estranged and he wrote them a note that he did not wish to communicate with them anymore in 2010 James filed his petition to become guardian of his father now mr. Hanley found a 2619 motion to dismiss and with it he submitted his affidavit in the sworn medical records or reports of two doctors which qualified as affidavits and that guardian ad litem was appointed by the court Jeremy Hypo mr. Hypo did his job he filed a report with the court and the report concluded that mr. Hanley was not in need of a guardian mr. Hanley's motion to dismiss was granted and on this appeal James argues makes three points to this court the first one I think can be disposed of very quickly it's the standard of review question in all of the briefs filed by or on behalf of James they argued that it's a de novo standard of review that's not exactly right your honors when we get to determinations of fact made by the trial court based upon the evidence the cases we cite show the standard of review as to those conclusions of fact it's a manifest weight standard of proof next James argues that the affidavits filed on behalf of James John P Hanley were conclusionary and they lack backup documents and I'll note at this point that the doctor's reports were in statutory form the statute our legislature spelled out a form for the doctors to fill out trying to make it easy for the parties and easy for everyone concerned including the doctors the doctor's reports that were sworn to by James John P Hanley were in statutory form and they also qualified as affidavits James argues that the reports were conclusions but that's what an expert does an expert states conclusions in fact the legislature requires the doctors to state their this case is similar to two cases we cited in our briefs the estate of Silverman and Williams versus Cole in both of those cases the response to a petition for guardianship of an adult was in the nature of doctor reports that qualified under the statute in statutory form and in both cases the appellate since they were statutorily sufficient they dismissed with prejudice as the court did here the third and final argument made by the appellant in this case is that there was there were material issues of fact in the trial court and he argues that in his briefs that the trial court should not have dismissed because there were material issues of fact now this is this was not a motion for summary judgment this was not a summary judgment proceeding where material issue of fact would prevent the entry of the judgment under 619 your honors the court may rule on the issues of fact and the ultimate facts presented to the court effect on page 8 of the appellants brief that's exactly what the appellants is if disputed issues of fact are raised under a section 2 6-6 19 motion the court may either deny the motion without prejudice or may hear and determine the merits of the dispute based on the believings affidavits counter affidavits and other evidence offered by the parties that's what the appellants say in their brief we agree with that so that totally destroys their third and final argument your honors that the court in this case the trial court was entirely proper in ruling upon the questions of fact presented by the affidavits and that procedure has been sanctioned by the cases in fact cited by both parties now finally mr. Hanley had a power of attorney and he had an estate planning attorney that Gerald Horne of Peoria he was in fine hands in that respect and the statutes say that the power of attorney trumps the guardianship there was actually no need for a guardianship because the power of attorney was in place and the other estate planning documents and that's all in the record two doctors and the guardian ad litem agreed that there was not there was no need for a guardianship there was really no evidence to the contrary the affidavits of the four relatives showed that mr. Hanley did not return phone calls he did not choose to talk to his estranged sons when he was confronted by them on various occasions one was interested these facts if taken as true were remote in time to obey and really not an indication of a need for guardianship thank you very much thank you mr. Rafferty mr. Rosler it pleased the court madam clerk counsel I represent Margaret Hanley Margaret is the person she is one of ten children born to mr. Hanley mr. Hanley appointed her president of a Lucas and sons at the time when years later those sons had actively been competing against the company it was the professional job of mr. James Hanley the petitioner here to compete and to win contracts and business away from a Lucas he's the person that has filed the for the order of protection when we filed our motion to dismiss our motion to dismiss came with a with an affidavit of certification from mr. Hanley that plainly stated that he objected to the initiation and continuation of these court proceedings the Domestic Violence Act requires that that someone like mr. Hanley not proceed in the face of an objection in 2008 the mr. Rafferty referred to the letter that mr. Hanley the father sent to James and the other sons I do not wish to communicate with you at this time your lack of integrity and dishonesty have been too large a part of my life I have moved on and would ask that you try to do the same I would submit to the court that nothing could be plainer in terms of an objection to mr. Hanley his son not only an objection against him filing for an order of protection but doing his grocery shopping carrying his bags doing anything for that man he had no interest in having mr. Hanley mr. James Hanley proceed to seek an order of protection I should not be here this case should not have been brought against Margaret Hanley I look forward to the opportunity to supplement the record when we argue in favor of the sanctions that have been assessed unless there are other questions I think mr. Walton some rebuttal I'll be brief first with with regard to the count one the petition for guardianship what council has not addressed are the deficiencies in the it's again it's a procedural question but rule 191 applies both to summary judgment motions and 619 motions based on an affidavit so the real question and by the way in reading further in our brief because counsel quoted from it the case law the same case that says that a judge a trial court can decide a case based on affidavits goes on to say that the circuit court cannot determine a based upon affidavits and counter affidavits unless the parties are afforded the opportunity for a hearing and that's all that really mr. Hanley requested here was a hearing on the merits and he was deprived of that in violation you think of what 619 says and particularly based on affidavits that did not comply with Supreme Court rule 191 now I just want to touch just on a global issue of you know why did James Hanley bring this action and again counsel's focused on a couple of affidavits from children first of all you know the dysfunction in the family the you know the disputes if you will set forth in the record and I'm not here to deny that but the question that becomes as a child you stop caring about your parent when you see what you honestly believe to be exploitation do you turn a blind eye to that just because your father and you had a dispute or do you try to do something about it my client decided based on what he has seen that he wanted to at least try to do something about it I would encourage the court if you don't read anything else read the affidavit of John P Hanley's brother not his children who are in fact you know feuding read the affidavit of his brother and and what does his brother Joseph Hanley say he says things changed dramatically after the fall my brother stopped communicating with me my brother when I went to John P Hanley's wife's funeral in 2009 did not appear to recognize me then later in 2009 in December this is all in the affidavit is that c146 in the record the 147 in December of 2009 John P Hanley missed the funeral of one of his siblings and that this you know was was shocking to his sibling now this sibling there's no allegation that he was involved in in some sort of a it's other family members that saw this change in their brother or their father and Jim Hanley decided that he wanted to try to do something about it that's why we're here so again we're here procedurally following a motion to dismiss and the question that the court has to answer is should the case have been dismissed based on cursory reports without factual support or should the court have at least gone the extra step of affording Mr. Hanley the opportunity to proceed to a hearing on the merits and then the court is in a position to make factual determinations and deny the relief or dismiss the case but but not without first affording a hearing on the merits and that's all that Mr. Hanley's for thank you thank you mr. Walton and thank all three of you for your arguments here today and I guess so it's clear if y'all want oral argument on your subsequent issues note so on your when you find your supplemental briefs and you can have additional oral argument on this consolidated part or it'll be up to you folks whatever you okay all right thank you know what that right now that's where